UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-61819-SMITH/VALLE

ELIJAH BRYANT,

      Plaintiff,

v.

KILOLO KIJAKAZI,[1]
Acting Commissioner of the
Social Security Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff's Motion for Summary Judgment (ECF No. 17) and Defendant's Motion for Summary Judgment (ECF No. 22) (together, "the Motions"). U.S. District Judge Rodney Smith has referred the Motions to the undersigned for a Report and Recommendation. (ECF No. 2).

After due consideration of the record and the parties' briefs, including Defendant's Response (ECF No. 23), Plaintiff's Reply (ECF No. 24), the Joint Status Report (ECF No. 26), the hearing on the Motions,[2] and being otherwise fully advised on the matter, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and the Administrative Law Judge's Decision ("ALJ's Decision") be **AFFIRMED** for the reasons set forth below.

---

[1] Kilolo Kijakazi has been appointed Acting Commissioner of the Social Security Administration. Consequently, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

[2] The Court held a hearing on the Motions on November 21, 2022. (ECF No. 28). The transcript of the proceedings (ECF No. 29) is incorporated by reference (hereinafter "Hr'g Tr.").

## I.     PROCEDURAL HISTORY

In January 2019, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*., alleging disability beginning on January 1, 1996.  (R. 144).[3]  Plaintiff's application was denied initially and again upon reconsideration.  (R. 77-79, 89-101).  Thereafter, Plaintiff requested a hearing, which was held on May 8, 2020, before ALJ Richard J. Ortiz-Valero.  (R. 102-104, 107-135).  Plaintiff appeared with counsel and testified at the hearing.  (R. 31-42).  A Vocational Expert ("VE") also testified.  (R. 42-45).  On June 1, 2020, the ALJ issued a decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act.  (R. 15, 24).

Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision."  (R. 1-6); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff now seeks judicial review of the ALJ's Decision.  (ECF No. 1); *see* 42 U.S.C. § 405(g).  Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.     STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making his determination.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson v. Comm'r of Soc. Sec*., 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  *Biestek*, 139 S. Ct. at 1154 (quoting

---

[3] All references are to the record of the administrative proceeding, which was filed as part of Defendant's Answer.  *See* (ECF Nos. 10, 11).

*Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance"). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), *abrogated on other grounds by Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citation omitted).

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. § 1382 (standard for SSI). A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1)    Is the person presently unemployed?
(2)    Is the person's impairment severe?
(3)    Does the person's impairment meet or equal one of the specific

impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?

(4)     Is the person unable to perform his or her former occupation?

(5)     Is the person unable to perform any other work within the economy?

20 C.F.R. § 416.920(a)(4) (evaluation for SSI).   An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability.   *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).   A negative answer to any question, other than Step 3, leads to a determination of "not disabled."   *Id.*

Importantly, the burden of proof rests on the claimant through Step 4.   *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004)*, abrogated on other grounds by Jones v. Soc. Sec. Admin., Comm'r*, No. 22-CV-10507, 2022 WL 3448090 (11th Cir. 2022).   At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to his past relevant work.   20 C.F.R. § 416.920(a)(4)(iv).   The regulations define RFC as that which an individual is still able to do despite the limitations caused by his impairments. 20 C.F.R. § 416.945(a).   The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case.   20 C.F.R. § 416.920(e).   The RFC assessment is used to determine whether the claimant can return to his past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled."   *Phillips*, 357 F.3d at 1238 (citations omitted).   If a claimant cannot return to his past relevant work, then the ALJ proceeds to Step 5.   *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v); *Phillips*, 357 F.3d at 1239.   The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform.   *Phillips*, 357 F.3d at 1239.   If the claimant can make the adjustment to other work, the ALJ will determine

that the claimant is not disabled.  *Id.*  Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled.  *Id.*  The ALJ may determine whether the claimant is able to adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. Part 404, Subpart P, Appendix 2); or (2) using a VE, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy.  *Id.* at 1239-40.

### III.   THE ALJ'S DECISION

On June 1, 2020, after reviewing the evidence and conducting the sequential analysis, the ALJ concluded that Plaintiff "is not disabled under the [Act]."  (R. 15, 24).

At Step 1, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 29, 2019, the date the application was filed.  (R. 17).

At Step 2, the ALJ found that Plaintiff had the following severe impairments: personality disorder, post-traumatic stress disorder, intellectual disability, depression, polysubstance abuse disorders, and obesity.  (R. 17).

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any one of the Listings.  (R. 17-20).

At Step 4, the ALJ determined that Plaintiff has the RFC to perform medium work, with various exertional and non-exertional limitations.  (R. 20).  More specifically, the ALJ's RFC limited Plaintiff to: (i) simple and repetitive tasks with no production rate or pace of work; (ii) occasional interaction with the general public, co-workers, and supervisors; and (iii) occasional changes in the work setting.  (R. 20-22).

Based on this RFC, the ALJ concluded that Plaintiff did not have past relevant work.  (R. 22).  The ALJ then proceeded to Step 5 of the sequential evaluation and found that Plaintiff could

perform other jobs in the national economy, such as an industrial cleaner, auto detailer, or factory helper, all unskilled jobs with a medium exertional level and an SVP of 2.  (R. 23).  Thus, the ALJ concluded that Plaintiff is not disabled.  (R. 24).

## IV.   DISCUSSION

On appeal, Plaintiff's primary argument is that the ALJ erred in discounting the opinion of Dr. Mary Lopez.[4]  (ECF No. 17 at 4-12).  Specifically, Plaintiff asserts that the ALJ improperly substituted his judgment for Dr. Lopez's judgment when he found that Dr. Lopez's psychological testing of Plaintiff was "not valid, and that her opinion [was] not persuasive, although it [was] supported by [her own] test results."  *Id*. at 6-7; *see* (R. 21).  As discussed below, however, the undersigned finds that the ALJ applied the proper legal standards and that the ALJ's Decision is supported by substantial evidence.  Accordingly, the ALJ's Decision should be affirmed.

### A.  Applicable Law

Social Security regulations require the ALJ to consider and evaluate all evidence, including medical opinions.  20 C.F.R. § 404.1513(a).  Medical opinions are statements "from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [the claimant]

---

[4] In his Motion, Plaintiff also argues that the ALJ's improper evaluation of Dr. Lopez's opinion resulted in: (i) an incorrect RFC assessment; (ii) an incorrect assessment as to whether Plaintiff met or equaled any of the Listings (Step 3); (iii) an incomplete hypothetical to the VE; and (iv) an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") for the jobs specified at Step 5.  (ECF No. 17 at 7-17).  During the hearing on the Motions, Plaintiff conceded that these arguments become moot if the undersigned finds that the ALJ properly evaluated Dr. Lopez's opinion.  *See* Hr'g Tr. 6:11-17, 16:8-13, 19:23-20:3.  The undersigned agrees.  Consequently, because the undersigned finds no error in the ALJ's assessment of Dr. Lopez's opinion, the undersigned need not consider Plaintiff's additional arguments, which are now moot.  In addition, Plaintiff voluntarily withdrew his argument regarding "whether the ALJ was constitutionally appointed and validly presided over Plaintiff's case."  (ECF No. 26 at 1); *see* Hr'g Tr. 4:14-20.

ha[s] one or more impairment-related limitations or restrictions" regarding his ability to perform physical demands (such as sitting, standing, walking, reaching, and handling, among others) and mental demands of work activities (such as understanding, remembering, and maintaining concentration, persistence, and pace).  20 C.F.R. § 404.1513(a)(2).

Relevant here, for medical opinions on claims filed after March 2017, the treating source rule has been eliminated.[5]  *Matos v. Comm'r of Soc. Sec.*, No. 21-CV-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) ("This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion."); *Ramos v. Kijakazi*, No. 20-CV-23478, 2021 WL 5746358, at *9 (S.D. Fla. Nov. 9, 2021); *Bonilla v. Saul*, No. 19-CV-25323, 2020 WL 9048787, at *4 (S.D. Fla. Oct. 23, 2020).  Under the applicable regulations, while a medical source's treatment relationship with a claimant remains a factor to be considered in assessing the persuasiveness of a medical source opinion, the opinion of a treating source is no longer entitled to controlling weight or deferential treatment.  *Ramos*, 2021 WL 5746358, at *9; *Bonilla*, 2020 WL 9048787, at *4.  Instead, the persuasiveness of any medical source's opinion (whether treating, examining, or reviewing) depends on whether the opinion is: (i) supported by objective medical evidence and the source's explanation of the doctor's opinion; and (ii) consistent with other evidence in the medical record.  20 C.F.R. § 404.1520c(c)(1)-(2).  These factors, referred to as

---

[5] For claims filed prior to March 27, 2017, the treating source rule generally required ALJs to give "controlling weight" or "greater weight" to a treating source's opinion absent "good cause." 20 C.F.R. § 404.1527(c).  There is no dispute that the post-2017 regulations govern Plaintiff's disability claim.

"supportability" and "consistency," are the "most important factors" in the ALJ's analysis.[6] 20 C.F.R. § 404.1520c(b)(2); *Matos*, 2022 WL 97144, at \*4; *Bonilla*, 2020 WL 9048787, at \*4. Additional factors include treatment relationship with the claimant, area of specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c)(3)-(5). Furthermore, although the ALJ must articulate how he considered medical opinions from all medical sources, the ALJ need only explain his consideration of the supportability and consistency factors. *Bonilla*, 2020 WL 9048787, at \*5; 20 C.F.R. § 404.1520c(b)(2).

### B. The ALJ Properly Evaluated Dr. Lopez's Opinion

In April 2019, Plaintiff visited Dr. Lopez, a licensed psychologist, for a one-time consultative examination. (R. 372). Dr. Lopez conducted a general intellectual and clinical evaluation and diagnosed Plaintiff with Bipolar I disorder, post-traumatic stress disorder, unspecified anxiety disorder, and a recent depression episode, with psychotic features. (R. 372, 377). Dr. Lopez determined that Plaintiff had a full-scale IQ of 41, "placing him in the extremely low range and above approximately <0.1% of his peers." (R. 375). Dr. Lopez opined that based on Plaintiff's "overall efforts and motivation during assessment, the present findings are deemed to be a valid and reliable sample of current cognitive functioning outside the examination setting." (R. 375). The ALJ, however, found that Dr. Lopez's test results were "not valid, and that her opinion [was] not persuasive, although it [was] supported by test results." (R. 21).

---

[6] "Supportability" refers to the relevance of "the objective medical evidence and supporting explanations presented by a medical source to support his or her" opinion. 20 C.F.R. § 404.1520c(c)(1). "Consistency" looks to whether "the evidence from other medical sources and nonmedical sources in the claim" are consistent with the medical opinions presented. 20 C.F.R. § 404.1520c(c)(2).

Plaintiff's argument that the ALJ improperly evaluated Dr. Lopez's opinion and substituted his judgment for that of Dr. Lopez hangs on the ALJ's evaluation of the consistency factor. *See* Hr'g Tr. 10:14-18.  In addressing consistency, the ALJ is not required to use specific language or formulations as long as the ALJ applied the proper legal standards and substantial evidence supports his decision. *See Gelbart v. Berryhill*, No. 17-CV-61361, 2018 WL 4573145, at *3 (S.D. Fla. Sept. 25, 2018).  Additionally, the ALJ is not required to discuss every piece of evidence or articulate "good cause" to discount Dr. Lopez's medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2); *Matos*, 2022 WL 97144, at *4.

Having reviewed the ALJ's Decision and the record, the undersigned finds that the ALJ adequately explained the consistency factor in evaluating Dr. Lopez's opinion. *See Gelbart*, 2018 WL 4573145, at *3 (concluding that, although regulatory factors were not enumerated and discussed by name, the evaluation of the factors was evident in the ALJ's analysis).  First, although the ALJ did not use the word "consistency" in his Decision, the ALJ adequately addressed this factor by citing to other medical evidence in the record to support his conclusion that Plaintiff's "presentation at [Dr. Lopez's] examination was very different from his presentation to his [other] providers," all of whom had noted good concentration and organized thought processes.  (R. 21); *see* (R. 347) (Dr. Hung Nguyen's December 20, 2018 treatment note reflecting that Plaintiff had "[g]ood concentration and focus," "[g]ood awareness of current events and conditions," and "[g]ood insight and judgment"); (R. 320) (Dr. Nguyen's January 17, 2019 treatment note finding the same); (R. 307) (Dr. Nguyen's February 14, 2019 treatment note finding the same); (R. 404) (Dr. Nguyen's June 6, 2019 treatment note finding the same); (R. 386) (Dr. Nguyen's July 3, 2019

treatment note finding the same).[7]  Based on this evidence, the ALJ properly concluded that "[t]his inconsistency in [Plaintiff's] presentation makes [Dr. Lopez's] test scores unreliable."  (R. 21).

Second, Plaintiff's argument that the ALJ did not properly consider the consistency factor fails to consider for the ALJ's Decision as a whole.  *See Estate of White v. Saul*, No. 19-CV-61745, 2020 WL 5351064, at *12 n.10 (S.D. Fla. Aug. 26, 2020), *report and recommendation adopted*, 2020 WL 5291966 (S.D. Fla. Sept. 4, 2020) (finding that the ALJ's Decision, when read in context, showed that single erroneous sentence did not amount to reversible error).  Here, the ALJ's Decision, read as a whole, contains substantial evidence for the ALJ's conclusion that Dr. Lopez's test results were invalid.[8]  *See, e.g.*, (R. 20) (ALJ's reference to Dr. Nguyen's medical records to conclude that Plaintiff's presentation to Dr. Lopez was inconsistent with his presentation during treatment with Dr. Nguyen); (R. 21-22) (ALJ's discussion of Plaintiff's: (i) June 6, 2019 visit with Dr. Nguyen, during which Plaintiff reported that he was doing "fairly good;" and (ii) July 3, 2019 visit with Dr. Nguyen, during which Plaintiff reported that he was doing "so so").  Moreover, during the hearing on the Motions, Plaintiff conceded that "[t]he documented findings do support the ALJ['s] findings."  *See* Hr'g Tr. 13:16-14:1-10 (discussion of the ALJ's explanation of consistency factor); *see also* (R. 307, 320, 347, 386, 404) (Dr. Nguyen's treatment notes reflecting Plaintiff's mostly normal mental status).  In sum, and as accurately summarized by the ALJ, Plaintiff's "treatment history does not support his allegations," and Plaintiff's "[m]ental status

---

[7] Dr. Nguyen was Plaintiff's treating psychiatrist.

[8] Plaintiff's reliance on *Popp v. Heckler*, 779 F.2d 1497 (11th Cir. 1986), is misplaced.  *See* Hr'g Tr. 8:14-25.  In *Popp*, the Eleventh Circuit upheld an ALJ's discounting of a claimant's disabling IQ test based on the ALJ's review of other evidence in the record (such as activities of daily living) contradicting the test results.  *See Popp*, 779 F.2d at 1499-1500.  Here, as in *Popp*, the ALJ relied on other evidence in the record when discounting Dr. Lopez's test results.  (R. 21); *see* Hr'g Tr. 12:10-14 (Plaintiff's concession that *Popp* does not require the ALJ to accept Dr. Lopez's opinion on its face).

examinations revealed essentially normal findings, which are not consistent with his reports of great difficulties in memory and concentration." (R. 22).

Accordingly, the undersigned concludes that the ALJ applied the proper legal standards in evaluating Dr. Lopez's opinion, that substantial evidence supports the ALJ's Decision, and that the ALJ's Decision should be affirmed.

## V.   RECOMMENDATION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 17) be **DENIED,** that Defendant's Motion for Summary Judgment (ECF No. 22) be **GRANTED**, and that the ALJ's Decision be **AFFIRMED**.

Within **14 days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1 (2022); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida on July 7, 2023.


ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE


cc: U.S. District Judge Rodney Smith
    All Counsel of Record